**AFFIDAVIT**

Your Affiant, Lee Lucas being duly sworn, deposes and states:

1. Your Affiant, Lee Lucas is an officer or employee of the United States Department of Justice (DOJ), Drug Enforcement Administration (DEA) within the meaning of Section 878(a) of Title 21, United States Code, that is an officer who is empowered by law to conduct investigations, make arrests, and seize property for violations of Title 18, United States Code and Title 21, United States Code.

2. Your Affiant is a Special Agent for the United States Department of Justice, Drug Enforcement Administration (DEA), and has been so employed since September 1990. During your Affiant's employment with the DEA, Your Affiant has been assigned to the Miami Field Division in Miami, Florida, the Lapaz Country Office in Santa Cruz, Bolivia and the Cleveland Resident Office (CRO) in Cleveland, Ohio.

**TRAINING AND EXPERIENCE**

3. Your Affiant has been involved in the investigation of various individuals and organizations involved in the manufacturing, distribution, and use of controlled substances. Your Affiant has conducted surveillance operations and has become familiar with the methods used by individuals engaged in the manufacturing, trafficking, and use of controlled substances. Your Affiant received specialized training at the DEA training facility located at the FBI Academy in Quantico, Virginia in regards to the identification of narcotic substances and the operation of drug trafficking organizations. Your Affiant has successfully conducted numerous investigations which have resulted in the arrest(s) of numerous drug traffickers and the seizure of significant quantities of drugs and drug related proceeds.

**PROBABLE CAUSE**

4. On 2-13-07, your affiant learned from a Source of Information (SOI) that Richard SMITH was a distributor of cocaine in Cleveland, Ohio. The SOI advised that he/she had delivered kilograms of cocaine to THOMAS on several prior occasions before the SOI began to assist law

enforcement. The SOI agreed to contact SMITH and advise SMITH that a load of cocaine was going to arrive, in order to see if SMITH would agree to distribute some of this cocaine.

5. On 2-13-07, the SOI made a recorded and monitored telephone call to SMITH at (216)324-6686. In summary, SMITH agreed to meet the SOI at the Mi Pueblo Restaurant located near the corner of West 122 Street and Lorain Avenue, Cleveland, Ohio. At this time, the SOI and his/her vehicle were searched with negative results for any drugs or money. The SOI was provided with a recording and transmitting device.

6. At approximately 8:08 PM, the SOI was followed to the restaurant, where the SOI was observed by S/A Lucas, Det. Todd Clark, and TFO John Pitts to meet with SMITH, SMITH's girlfriend, and his 10 YOA son, who had arrived driving a white Lincoln Navigator, Ohio temp tag M927504, which was registered to SMITH. The SOI, SMITH, and SMITH's family went into the restaurant.

7. During the recorded and monitored conversation, SMITH agreed to receive 7-8 kilograms of cocaine from the SOI, that was to arrive to Cleveland, Ohio, on or about February 15, 2007. During the conversation, SMITH admitted that he planned to sell several of these kilos of cocaine to Devin (DUNSON), and that DUNSON had recently purchased two kilos of cocaine from another individual, paying $46,000.00 for this cocaine. SMITH went on the explain to the SOI how he could sell the cocaine quickly, and prices of cocaine were discussed.

8. At approximately 8:54 PM, SMITH and his family departed and were followed to their residence. The SOI was followed to a pre-determined meet location, where the SOI and his/her vehicle were again searched with negative results for any drugs or money.

9. On 2-15-07, the SOI made a recorded and monitored telephone call to SMITH at (216)324-6686. In summary, the SOI advised that it had arrived, and that SMITH should meet the SOI in the parking lot of the Holiday Inn on West 150 Street and I-71. The SOI and his/her vehicle were again searched with negative results for any drugs or money.

10. At this time, police units secured rooms #308 and 310 at the La Quinta Inn located near the Holiday Inn. Room 310 was equipped with an audio and video recorder, which the officers in the next room to watch and listen to the meeting in room 310. S/A Lucas, who was acting in an undercover capacity, was equipped with a bag of seven (7) kilograms of cocaine.

11. Shortly thereafter, Det. Pitts observed the SOI to meet with SMITH in the parking lot of the Holiday Inn. SMITH proceeded to follow the SOI to the La Quinta Inn. SMITH was again driving his Lincoln Navigator, and was again accompanied by his girlfriend and 10 YOA child. When SMITH and the SOI arrived at La Quinta Inn, they were followed to room 310. The girlfriend and child remained in the Navigator.

12. The SOI and SMITH were let into room 310 by S/A Lucas. S/A Lucas produced the bag containing the seven (7) kilos of cocaine and SMITH proceeded to explain that he was going to sell between 3-4 of these kilos of cocaine to Devin aka Fat Boy, and bring back approximately $60,000.00 within two hours. SMITH also advised that he would sell the remaining kilos of cocaine and return to S/A Lucas with the money derived from selling this cocaine by the following evening. After counting the seven kilos of cocaine, SMITH accepted delivery of the bag and departed the hotel room. This transaction was audio and video recorded and monitored by six officers, including Lt Mike Connelly, Det. Todd Clark, Det. John Dlugolinski, S/A Dave Caunter, Det. James Cudo, and Det. Eddy Cuadra. As SMITH approached the elevator, he was arrested.

13. S/A Lee Lucas advised SMITH of his Miranda Warnings in the presence of the above listed officers. SMITH stated that he understood his rights and wanted to make a statement. SMITH provided a written and oral statement, as well as signing a consent to search for his residence. In summary, SMITH advised that he has known the SOI for several years, and has received kilograms of cocaine that he distributed in Cleveland, Ohio, on numerous occasions. SMITH stated that he had met with the SOI on 2-13-07, and

had in fact agreed to take delivery of 7-8 kilos of cocaine, which he planned to sell in Cleveland, Ohio. SMITH stated that he had advised his customers that he would be receiving a large load of cocaine, and that he had been receiving numerous calls from his customers throughout the day, in anticipation of being served cocaine. SMITH admitted that he had purchased cocaine from and sold cocaine to Devin DUNSON, on numerous occasions. SMITH stated that DUNSON had advised SMITH that he had recently purchased two kilograms of cocaine from an unknown male, and paid $46,000.00 for this cocaine. SMITH stated that DUNSON had requested to purchase 4 kilos of cocaine for $20,000 per kilogram, but was $5000.00 short of $80,000. Therefore, SMITH had agreed to deliver DUNSON three kilos of cocaine this same date. SMITH advised that DUNSON resided on Jeffries Avenue, in the bottom of a double residence. SMITH identified a photo of DUNSON.

14. SMITH proceeded to make a series of recorded and monitored calls to DUNSON. In summary, SMITH agreed that he was enroute to DUNSON's residence with the cocaine, and DUNSON advised that he had the money ready at his house.

15. At this time, a Cuyahoga County search warrant was issued for 9002 Jeffries Avenue, Cleveland, Ohio. S/A Lucas and SMITH proceeded to 9002 Jeffries. SMITH was equipped with three kilogram sized bricks containing "sham" cocaine and a recording/transmitting device. S/A Lucas and SMITH then went to 9002 Jeffries Avenue. SMITH knocked on the door and was let into the residence by DUNSON. Once S/A Lucas was able to overhear that DUNSON was checking the kilos, Cleveland Police SWAT executed the search warrant.

16. DUSNON was arrested in the kitchen of the residence, along with SMITH. A male and a female were found in the living room. One of the kilogram bricks of "sham" cocaine was found on the kitchen counter, next to a knife and a box of baking soda. Misc. drug paraphernalia was also located inside of the residence, as well as the cellular telephone DUNSON had used to set up the transaction. Foot prints in

4

the snow were followed in the backyard of the residence, which resulted in the seizure of a large amount of US Currency, which had been placed in a bag and thrown into the back neighbor's yard.

17. S/A Lucas advised DUNSON of his Miranda Warnings, in the presence of Capt. Brian Heffernan and Det. John Pitts. DUNSON stated that he understood his rights, and signed a Miranda Warnings waiver form. DUNSON stated that SMITH had brought three kilos of cocaine into his house, and had asked him to check these kilos of cocaine. DUNSON stated that he was going to "cook" some of this cocaine into crack, to check the quality. DUNSON admitted to taking the kilos into the kitchen, and cutting the plastic off of one of the kilos. DUNSON stated that he was going to "check" these kilos for SMITH, but denied that he was going to purchase these kilos. DUNSON also denied any knowledge of the US Currency seized from the backyard.

## CONCLUSION

18. Based upon the above listed facts and circumstances, Your Affiant has probable cause to believe, and does believe that Richard SMITH and Devin DUNSON, did knowingly, and intentionally conspire to possess with intent to distribute over five kilograms of cocaine, a Schedule II narcotic controlled substance, in the Northern District of Ohio, Eastern Division, in Violation of Title 21 USC 841 (a)(1) and (b)(1)(A) and 846. Your Affiant requests that Arrest Warrants be issued for SMITH and DUNSON.

_____
Lee Lucas
Special Agent
Drug Enforcement Administration


Sworn to and subscribed before me this 16th day of February, 2007.

_____
Kenneth S. McHARGH
United States Magistrate Judge
Northern District of Ohio
Eastern Division